**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES CANNON, derivatively on behalf of Nominal Defendant BRIDGEPOINT EDUCATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW S. CLARK; DANIEL J. DEVINE; JANE MCAULIFFE; RODNEY T. SHENG; PATRICK HACKETT; RYAN CRAIG; ROBERT HARTMAN; ADARSH SARMA; DALE CRANDALL; DR. MARYE ANNE FOX; and ANDREW M. MILLER, <br><br> Defendants. | CASE NO. 13cv2645 JM (NLS) <br><br> ORDER DENYING MOTION FOR DISMISSAL WITHOUT NOTICE TO SHAREHOLDERS |

This order addresses Plaintiff's motion for voluntary dismissal of this derivative action without prejudice and without notice to shareholders. (Doc. No. 21.) As set forth below, because Plaintiff has not shown that this action can be dismissed without first providing notice to shareholders, the motion is denied.

## BACKGROUND

**A.    The Complaint**

On November 1, 2013, after making an inspection demand and receiving documents in response, Plaintiff filed this shareholder derivative action on behalf of Nominal Defendant Bridgepoint Education, Inc. ("Bridgepoint") against certain officers and members of the Board of Directors ("Defendants"). (Doc. No. 1.) The initial complaint was filed under seal, so the court directed Plaintiff to file a redacted amended complaint, which he did on November 25, 2013. (Doc. No. 9.)

Plaintiff's claims are premised on conduct that occurred between May 3, 2011, and July 13, 2012 ("the relevant period"). He alleges as follows:

Bridgepoint is a for-profit, post-secondary education services provider with academic institutions online and in at least two physical locations. The locations are Ashford University ("Ashford") in Clinton, Iowa, and the University of the Rockies in Colorado Springs, Colorado.

Bridgepoint purchased what is now known as Ashford in March 2005. Prior to the acquisition, Ashford was called Mount St. Clare College, The Franciscan University, and The Franciscan University of the Prairies. In each of these earlier incarnations, the school was run as a traditional not-for-profit school. Bridgepoint converted the school to its current for-profit commercial status.

When Bridgepoint purchased Ashford, the school was accredited by the Higher Learning Commission of the North Central Association of Colleges and Schools ("HLC"). The school's accreditation had been certified in 2006 and would not come up for comprehensive review until 2014.

Although Ashford's physical campus is in Iowa, it also offers online courses. The majority of students enrolled in its online programs resided in the San Diego, California area. Because this large portion of Ashford's student body was outside of the HLC's jurisdiction, it endangered Ashford's HLC accreditation when, in 2010, the HLC adopted a policy requiring institutions to demonstrate a "substantial presence" in HLC's region, the north-central portion of the United States. Hence, in August 2010, Bridgepoint began the process of obtaining accreditation from the Western Association of Schools and Colleges ("WASC"), the regional accreditor for schools in the San Diego area.

Bridgepoint is required to maintain proper accreditation because it derives a substantial amount of its revenue from various federal student financial assistance programs. Under Title IV of the Higher Education Act of 1965, higher education institutions must be accredited by a Department of Education ("DOE") approved

accreditor to enable students to access its financial assistance programs. If an educational institution is not properly accredited, its students cannot obtain federal student financial assistance. The vast majority of students matriculating at Ashford require these federal loans in order to afford to attend the school.

Bridgepoint attempted to gain WASC accreditation through "Pathway B," which was the WASC accreditation process for established institutions that already maintain accreditation with another DOE-recognized accrediting agency. Pathway B required schools to meet the same standards of accreditation as a school seeking initial accreditation and was simply an expedited process.

On May 23 and June 3, 2011, WASC sent Bridgepoint letters identifying areas that Bridgepoint needed to address to gain WASC accreditation. The issues included inadequate student retention and degree completion, insufficient student progress tracking, an insufficient core of full-time faculty, and the lack of an empowered and independent governing board.

Bridgepoint never informed the public of these letters. They were only revealed to the public by WASC in its eventual denial letter. Several executives and directors did, however, act upon the information in the letters for their own personal gain by selling Bridgepoint stock at its high price during the relevant period. Even after these warning letters, Defendants continued to portray Ashford's accreditation prospects positively in public statements, while failing to take sufficient action to rectify the inadequacies described in the letters from WASC.

On July 3, 2012, WASC formally denied Ashford's accreditation for a laundry-list of reasons. The WASC rejection and other allegedly significant deficiencies caused HLC to place Ashford on "special monitoring status." Based on Board materials Plaintiff obtained through his inspection demand, the denial of accreditation should not have come as a surprise to the Board, even though they concealed it from the public.

During the relevant period, Defendants caused Bridgepoint to issue materially

false and misleading statements about Bridgepoint's accreditation prospects, operations, management, and internal controls. In particular, they failed to disclose that WASC had numerous concerns regarding Bridgepoint's practices at Ashford and was likely to deny accreditation. Maintaining proper accreditation is material for Bridgepoint because, without accreditation, Bridgepoint is disqualified from receiving the federal funding from which it derives 93.7% of its annual revenue.

Defendants knew that Bridgepoint's stock was artificially inflated and they neglected to inform shareholders of the truth, in violation of their fiduciary duties. Furthermore, their issuance of these materially false and misleading statements have subjected Bridgepoint to a complaint for violation of federal securities laws, currently pending in this court, No. 12-cv-1737, <u>In re Bridgepoint Education Inc. Securities Litigation</u> ("the securities class action"). In defending the securities class action, Bridgepoint has incurred investigative and litigation costs and is faced with substantial potential liability for violations of securities laws and the costs of defending the suit. On September 13, 2013, this court issued an order granting in part and denying in part defendant's motion to dismiss the securities class action. In the order, the court held that Bridgepoint's statements regarding student persistence were false and misleading on their face, and that discovery could reveal that Bridgepoint's statements regarding Ashford's accreditation application with WASC were false and misleading.

As a result of the Board's actions and failure to maintain proper internal controls, Bridgepoint made false and misleading statements concerning the adequacy of its academic programs and its accreditation prospects and caused Ashford to be denied initial accreditation by WASC and to come under closer scrutiny by its current accreditor, HLC. Defendants' wrongful conduct, in derogation of their fiduciary duties of loyalty, trust, good faith, and candor, continues to expose the company to substantial liability, has damaged its market capitalization and goodwill, and caused the company to expend significant sums

of money for the investigation, defense, and possible settlement or judgment in the securities class action and other investigations related to claims brought forth by various governmental agencies.

Based on these allegations, Plaintiff asserts claims for (1) breach of fiduciary duty; (2) abuse of control; (3) gross mismanagement; (4) waste of corporate assets; (5) breach of the fiduciary duties of loyalty and good faith in connection with insider stock sales; and (6) unjust enrichment.  He seeks monetary damages, injunctive relief, and attorney fees and costs.

**B.     The Stay**

On December 9, 2013, the parties requested a stay.  (Doc. No. 11.)  They represented that the claims in this case are predicated on a finding of liability in the securities class action and that a stay had been granted in a similar derivative action pending San Diego Superior Court that, like this case, is predicated on liability in the securities class action, No. 37-2012-00101167-CU-BT-CTL, Martinez v. Clark ("the state derivative action").  On January 6, 2014, the court ordered a stay of proceedings in this case pending completion of discovery in the securities class action.  (Doc. No. 12.)

**C.     Plaintiff's First Motion**

On June 12, 2015, Plaintiff filed a motion for voluntary dismissal without prejudice and without notice to shareholders.  (Doc. No. 19.)  He asserted that no notice was necessary because neither he nor his counsel had received compensation for the dismissal, and the state derivative action was substantially similar to this case and was still pending.

On June 16, 2015, the court denied Plaintiff's motion without prejudice. (Doc. No. 20.)  The court noted that voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i) is subject to Federal Rule of Civil Procedure 23.1(c), which provides that a derivative action can be voluntarily dismissed only with the court's approval, and that notice of the proposed dismissal must be given to

shareholders in the manner the court orders. The court denied Plaintiff's motion because he had not provided any legal authority or analysis addressing the circumstances under which the notice requirement can be dispensed with, and he did not submit a proposed order or any information to allow the court to verify that the state derivative action was similar to this one.

**D.    The Instant Motion**

On July 7, 2015, Plaintiff filed a second motion for voluntary dismissal without prejudice and without notice to shareholders. (Doc. No. 21.) This motion is supported by legal analysis and accompanied by the complaint from the state derivative action. (Doc. No. 21-7).

## DISCUSSION

**A.    Standing**

Plaintiff states that he has sold his shares, so that he no longer has standing to serve as the representative plaintiff in this action. (Doc. No. 21-2 at 2.) The court notes that a plaintiff's lack of standing to proceed as the representative plaintiff does not excuse him from his duty to provide notice and does not divest the court of jurisdiction to order notice. See Lewis v. Knutson, 699 F.2d 230, 240 (5th Cir. 1983); Bushansky v. Armacost, 2014 WL 2905143, at *2 (June 25, 2014). When a named plaintiff cannot proceed with a derivative action after selling his stock, "another qualified shareholder can intervene on the grounds that [his] rights are no longer represented." In re Extreme Networks, Inc. S'holder Derivative Litig., 573 F. Supp. 2d 1228, 1237 (N.D. Cal. 2008).

**B.    Is Notice Required Prior to Dismissal?**

As noted above, Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits voluntary dismissal of an action subject to Federal Rule of Civil Procedure 23.1(c), which provides: "A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise *must* be given to shareholders or members

in the manner that the court orders." (Emphasis added.)

"Notice is essential in these situations to ensure that the dismissal of the derivative suit is in the best interests of the corporation and the absent stockholders." Papilsky v. Berndt, 466 F.2d 251, 258 (2d Cir. 1972).

Rule 23.1(c)'s notice and approval requirements serve several purposes. They "discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders," and they prohibit voluntary dismissal from being a "cloak for a collusive settlement between the plaintiff-stockholder and the defendants." Id. They protect the corporation and absent stockholders from a plaintiff who becomes "fainthearted" and wishes to settle, even though doing so would not be in the best interest of the corporation. Id. They also protect "against prejudice to the corporation from discontinuance of a derivative suit after the plaintiff-stockholder has already secured an advantage or when the statute of limitations precludes the institution of a new suit." Id.

Despite Rule 23.1(c)'s mandatory language, some courts have excused notice, but "only in very limited circumstances." Bushansky, 2014 WL 2905143, at *5 (collecting cases). The essential requirement for excusing notice of voluntary dismissal appears to be that there must be no risk of prejudice to the corporation or absent shareholders if notice is not given. For example, in Sheinberg v. Fluor Corp., 91 F.R.D. 74 (S.D.N.Y. 1981), notice was excused because the plaintiffs had concluded that their claims lacked merit and the underlying conduct was recent, so there was "no danger that the statute of limitations would bar assertion of claims by other class members." Id. at 75.

Plaintiff asserts that none of the considerations underlying Rule 23.1(c)'s notice requirements are operative here. (Doc. No. 21-2 at 5.) He represents that neither he nor his counsel have sought or received any consideration for dismissing this case, and he asserts that there is little risk of prejudice to absent shareholders

without notice because the statute of limitations on his claims has not expired and this case is "virtually identical" to the state derivative action.

The essential difficulty is that Plaintiff did not provide any analysis to support these assertions. In particular, he did not identify the relevant limitations periods for his claims or when they will expire, and he did not provide any analysis of why this case and the state case are substantively identical. Indeed, a cursory comparison of the complaints revealed some notable differences, including that this case involves three claims—abuse of control, gross mismanagement, and breach of the fiduciary duties of loyalty and good faith in connection with insider stock sales—that are nowhere to be found in the state complaint.[1] Thus, while the cases are similar, they do not appear to be identical, and Plaintiff has given the court no reason to conclude otherwise. Moreover, Plaintiff filed his complaints under seal, representing that they contain confidential information gleaned from his inspection demand. That suggests that this case is premised on information the state plaintiffs do not have.

Additionally, as Plaintiff notes, Bridgepoint notified shareholders of this action by repeatedly disclosing its existence and progress in its quarterly filings. Because absent shareholders were notified of this action, they may have refrained from filing similar actions in reliance on Plaintiff's litigation of this case. If the limitations period has passed or will soon pass, any claims not encompassed by the state complaint will be extinguished if this case is dismissed. This is one type of prejudice Rule 23.1(c)'s notice and approval requirements were designed to protect against. See Papilsky, 466 F.2d at 258 ("[N]otice to nonparty stockholders of voluntary dismissals protects against prejudice to the corporation from discontinuance of a derivative suit . . . when the statute of limitations precludes the institution of a new suit.").

///

---

[1] The state complaint is attached to Plaintiff's motion as Doc. No. 21-7.

Because Plaintiff has not shown that there is no risk of prejudice if this case is dismissed without giving shareholders notice and an opportunity to intervene, his motion to dismiss without notice to shareholders is denied.

**C.    Going Forward**

Plaintiff represents that, if this case is dismissed, to minimize the cost of providing notice to millions of shareholders, Bridgepoint is willing to issue a disclosure regarding the dismissal in its next Form 10-Q, which will be filed in early August.  (Doc. No. 21-2 at 5–6.)

However, Plaintiff did not suggest what to do if notice is required before the case can be dismissed, and it is not clear that Bridgepoint is willing to provide notice to shareholders who may wish to intervene before the case is dismissed. Other courts have been willing to implement combinations of cost-saving methods of notice, such as a press release by the company, a link on the company's investor website to a webpage that will be displayed for at least 30 days, and an 8-K filing with the SEC.  See Bushansky, 2014 WL 2905143, at *6–7 (collecting cases). Although there is no sense in requiring more expensive methods when other methods will suffice, these less expensive methods require the company's cooperation.

Accordingly, within 30 days after entry of this order, the parties are ordered to meet and confer and submit a joint notice plan to the court, including the proposed language, forms, methods of delivery, and dates for the proposed intervention period.  The filing must be captioned as a motion for issuance of notice.  If the parties cannot agree on the particulars, they must submit a joint statement to that effect within 30 days after entry of this order.  After the court has reviewed the plan and ordered notice, if no shareholder intervenes, Plaintiff shall file a motion requesting dismissal of this action.

///

///

**CONCLUSION**

Plaintiff's request to dismiss this action without prejudice and without notice to shareholders, (Doc. No. 21), is DENIED. The parties shall meet and confer and submit a notice plan to the court consistent with the requirements set forth above.

IT IS SO ORDERED.

DATED: August 3, 2015

*/s/ Jeffrey T. Miller*
Hon. Jeffrey T. Miller
United States District Judge